DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants Joel Helms, Jerry Williams and Jacalyn Luli appeal a decision granting summary judgment in favor of Appellees, City of Green, Ohio and Kenmore Construction Co., Inc., and denying Appellants' motion for partial summary judgment in the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} In the spring of 2006, pursuant to Green City Ordinance ("GCO") 210.06(a)(1), the City of Green ("City") issued a notice of sealed bids for two projects in the City. The first project was to install a 12 inch sanitary sewer in *Page 2 
conjunction with a 10 inch sanitary force main and a pump station at the corner of Greensburg and Massillon Road in the City. ("Sewer Project"). The second project was to make improvements to 1,650 feet of Massillon Road and 1,475 feet of Greensburg Road at the intersection of these two roadways ("Road Improvement Project") (The Sewer Project and Road Improvement Project shall hereafter be collectively known as the "Project"). Notices of sealed bids for the Project were properly published in the Akron Beacon Journal. Pursuant to GCO 210.06(b), the Green Engineer received and opened the sealed bids and recommended to City council that the contracts be awarded to Appellee Kenmore Construction Co., Inc. ("Kenmore Construction").
 {¶ 3} On May 23, 2006, City council adopted and City Mayor Croghan approved Resolution Nos. 2006-R39 and 2006R-40 formally awarding the contracts for the Project to Kenmore Construction (the "Resolutions"). Kenmore and the City entered into contracts related to the Project. The contracts provided that the City would pay Kenmore Construction $3,677,271.80 for the Sewer Project and $1,260,558.15 for the Road Improvement Project.
 {¶ 4} All of the City's sewer facilities and equipments are owned and operated by Summit County pursuant to GCO 1250.01(a). The Sewer Project was to be owned and operated by Summit County. Accordingly, on April 17, 2006, Summit County ("County") adopted Resolution No. 2006-145 authorizing the County executive to execute all documents necessary to permit the County to *Page 3 
participate in the design and property acquisition related to the Project. On October 25, 2006, the County and the City entered into a contract, entitled Agreement for the Construction of Private Financed Sanitary Sewer and Pump Station ("County Contract").
 {¶ 5} It should also be noted that after the resolutions were passed, Appellants filed referendum petitions seeking to put the Project on the ballot. The petitions were forwarded to the Board of Elections to determine the validity and sufficiency of the signatures. The Board of Elections determined that there were not sufficient signatures on the petitions. Appellants dispute this determination.
 {¶ 6} On September 14, 2006, Appellants brought an action for declaratory judgment, injunctive relief and mandamus asking the court to suspend construction of the Project pending a required referendum submission and disposition of that referendum. The City and Kenmore Construction each filed motions for summary judgment and Appellants filed a motion for partial summary judgment on their claims for declaratory judgment and injunctive relief. The City also filed a motion for sanctions for frivolous conduct against Appellants. On November 30, 2006, the trial court issued its judgment entry granting the City and Kenmore Construction's motions for summary judgment and denying Appellants motion for partial summary judgment.
 {¶ 7} Appellants have timely appealed the court's November 30, 2006 judgment entry and raise one assignment of error. *Page 4 
 Assignment of Error "The trial court erred in granting Defendant-Appellees' summary judgment motions, and denying Plaintiff-Appellants' motion for partial summary judgment."
 {¶ 8} Appellate courts review the grant of summary judgment de novo, applying the same standard used by the trial court. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. Accordingly, an appellate court reviews the same evidence that was properly before the trial court. Am. Energy Servs., Inc. v. Lekan (1992), 75 Ohio App.3d 205, 208. Summary judgment is proper if there is no genuine dispute of a material fact so that the issue is a matter of law or reasonable minds could come to but one conclusion, that being in favor of the moving party. Civ.R. 56(C); Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 9} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of any genuine issue of material fact as to the essential elements of the nonmoving party's claims or defenses. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once the moving party's burden has been satisfied, the burden shifts to the non-moving party, as set forth in Civ.R. 56(E). Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), *Page 5 75 Ohio App.3d 732, 735. Any doubt is to be resolved in favor of the nonmoving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,12.
 {¶ 10} Pursuant to Civ.R. 56(C), only certain evidence and stipulations, as set forth in that section, may be considered by the court when rendering summary judgment. Specifically, the court is only to consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." Civ.R. 56(C). Due to this strict language, affidavits are the means typically used to introduce evidence for consideration in a summary judgment motion. Robinson v. SpringfieldLocal School Dist. (Mar. 27, 2002), 9th Dist. No. 20606. An affidavit must be made on personal knowledge and a sworn or certified copy of the document referred to in the affidavit must be attached to or served with it. Civ.R. 56(E). Thus, affidavits overcome concerns with authenticity of the evidence. Mitchell v. Ross (1984), 14 Ohio App.3d 75, 75 (holding that "[documents which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and shall not be considered by the trial court.").
 {¶ 11} Appellants present five issues for review. In their first three issues, Appellants assert that the Resolutions are subject to referendum proceedings pursuant to Article XVIII, § 5 of the Ohio Constitution and such requirement is not excused by Article II, § 1(f) of the Ohio Constitution. Appellants assert the passage of the Resolutions constitutes a legislative act (not administrative) and *Page 6 
that Article XVIII, § 5 of the Ohio Constitution requires any municipality that constructs or owns a public utility or contract with any company therefore, to act by ordinance with a separate provision for referendum review.
 {¶ 12} The trial court specifically addressed Article XVIII, § 5 of the Ohio Constitution and found it to be not applicable to the instant matter because "the City was not acquiring or beginning to acquire, own or operate a public utility * * * when it approved entering into agreements between the City and Kenmore[.]" As such, the trial court found the City's actions to be entirely administrative and not subject to referendum proceedings. In so finding, the trial court relied upon Ohio Supreme Court holdings in Buckeye Community Hope Found v. CuyahogaFalls (1998), 82 Ohio St.3d 539 interpreting Article II, Section 1(f) of the Ohio Constitution and Donnelly v. Fairview Park (1968),13 Ohio St.2d 1. We agree. In Buckeye, the Ohio Supreme Court held that:
 "[Pursuant to Section 1f, Article II of the Ohio Constitution, actions taken by a legislative body, whether by ordinance, resolution, or other means, that constitute administrative action, are not subject to referendum proceedings." Buckeye at paragraph two of the syllabus.
 {¶ 13} In Donnelly, the Ohio Supreme Court set forth the test of whether a city council's action is legislative or administrative as "whether the action taken is one enacting law, ordinance or regulation, or executing or administering a law, regulation or ordinance already in existence." Donnelly at paragraph two of the syllabus. *Page 7 
 {¶ 14} We initially note that Chapter 1250.01(a) of the City charter specifies that "all sanitary sewage systems and water supply systems which shall become owned and operated by Summit County as approved by the City Council and the County Executive through the Department of Environmental Services, shall conform to the design standards, specifications and procedures of the Department[.]" Thus, it is clear that the City's water and sewage systems were to be owned and operated by the County as of the date the Charter was enacted in 1992. Indeed, Mayor Croghan indicated via affidavit that the City has never owned or operated its sanitary sewer system. He further indicated that the City has partnered with the County on several occasions to expand and improve the City's sewer system and that, in all cases, the ownership of the new facilities was conveyed to the County.
 {¶ 15} Next, it is undisputed that the Resolutions were passed according to existing Ohio law and GCO 210.06, which set forth the procedure for City council's approval of capital improvement projects:
 "(b) After receiving and opening the bids in a manner prescribed by law, the Mayor or the Mayor's designee shall transmit such bids with a recommendation thereon to Council for consideration at a regular meeting of Council. The information set forth therein shall be presented to Council by resolution." GCO § 210.06(b).
 {¶ 16} Based on the foregoing, the passage of the Resolutions was not an enactment of a new law or ordinance. Instead, it was the administration of an already existing ordinance which required the City's sewer systems be owned and *Page 8 
operated by the County after contracts were awarded pursuant to a proper bidding procedure. We find the passage of the Resolutions to be administrative under the Donnelly test.
 {¶ 17} Moreover, the Ohio Supreme Court has spoken on this issue vis-À-vis utilities owned and operated by a municipality and held that " `the alteration, repairing, improvement, enlarging and extending' of a municipal utility, was not subject to referendum under the provisions of Section 5 of Article XVIII of the Constitution." State ex rel. City ofFostoria v. King (1950), 154 Ohio St. 213, 217-18, quoting State ex rel.Schell v. Abbott (1936), 54 Ohio App. 510, 512. See, also, State, exrel. Taxpayers League of N. Ridgeville v. Noll (1984),11 Ohio St.3d 190. That the sewer system here was never owned or operated by the City of Green is a distinction without a difference. There is nothing to support the proposition that where a city has never owned a utility, that an improvement of the utility owned and operated by another governmental entity, should be subject to referendum. As such, there is no genuine issue of material fact as to whether the Resolutions are subject to referendum based on the Ohio Constitution.
 {¶ 18} Appellants next assert that the City's charter requires the Resolutions to be subject to referendum review. Specifically, Appellants assert that Section 8.5 of the City's charter requires elector approval of the Resolutions. Section 8.5 of the City's charter states: *Page 9 
"When a function of the City is proposed to be performed for the first time subsequent to the adoption of this Charter by officers and employees of the City rather than pursuant to contracts with other governments, persons, or firms, and the cost of the annual operation and capital requirements would exceed twenty percent (20%) of the City's revenues in the prior fiscal year, which revenues were lawfully available for such function, then Council shall place the question of whether such function shall be performed by officers and employees of the City rather than by contract upon the ballot of the next general, primary, or regular Municipal election to be held within the City."
 {¶ 19} Appellants asserts that this provision is applicable because, while the Project was to eventually be owned and operated by the County, the County Contract was void as it was not authorized by City council via ordinance or resolution as required by R.C. § 6117.04(A). Without a valid contract with the County, the City was required to retain control and management of City's sewer facilities per R.C. § 6117.42. Because the City would be required to retain control of the Project, it would be performing a function for the first time and the City was required to place the function upon the ballot because the cost of operating the Project would exceed 20% of the City's revenues.
 {¶ 20} The trial court found the Project was not
 "[a] function covered by Section 8.5 * * * [because] this section applies only to City functions which City officers and employees are to perform for the first time. In this case, the County maintains a current sewer system within the County and this extension of the existing sewer system is not the first time that the sewer system has been in operation within City boundaries. [Moreover], the City does not own or operate the sewer system, including the extension projects at issue in this case." *Page 10 
 {¶ 21} We agree with the trial court. There is no genuine issue of material fact that the City's sewer system was in existence and already owned and operated by the County pursuant to the City's charter. Moreover, as we discussed above, because the City was not acquiring, owning or operating a public utility, its actions in passing the resolutions and entering into contracts with Kenmore Construction and the County were proper and did not require referendum review. It is equally clear that the maintenance and operation of the sewer system was not going to be performed by City employees. Thus, the Project was not a "function" as set forth in Section 8.5.
 {¶ 22} The trial court further found that even if the Project was a function covered by Section 8.5, based upon the affidavit of the City's Finance Director and the City's financial report, the cost of the Project did not exceed the 20% minimum required to place the matter before the voters. The trial court further found that Appellant Helms's affidavit was self-serving and lacked "the factual basis to create any issues of fact regarding city finances." We agree.
 {¶ 23} "Affidavits supporting or opposing a motion for summary judgment must (1) be made on personal knowledge; (2) set forth facts that would be admissible in evidence; and (3) demonstrate the competency of the affiant to testify with respect to the subject matter of the affidavit." Premierbank Trust v. Andrass (Dec. 22, 1999), 9th Dist. No. 98CA007115, at *3; Civ.R. 56(E). *Page 11 
 {¶ 24} Our review of the record finds two affidavits executed by Appellant Helms purportedly in support of his assertion that the cost of the Project exceeded 20% of available revenues and therefore, should have been placed on the ballot. The first is attached to Appellants' memorandum contra the City's motion for summary judgment. This affidavit does not address the cost of the Project and does not support Appellants' position that the cost of the Project triggered referendum review pursuant to Section 8.5 of the City's charter. Moreover, the documents attached to the brief that may have supported such an argument were not authenticated by affidavit or otherwise.
 {¶ 25} In the second affidavit, which was attached to Appellants' motion for leave to supplement and amend their memorandum contra, Mr. Helms references several documents attached to his affidavit without authenticating or indicating the source of some of them. Appellant Helms then makes several conclusory statements based on the knowledge he acquired from his participation in the Citizens Committee of the Akron Metropolitan Area Transportation study, and his knowledge of fair market values of rights of way and "waterline cost" components. It is unclear how this knowledge gives Appellant Helms a factual basis to make any assertion about the financial aspects of the Project vis-à-vis the City's finances. Of even greater import, however, is the fact that Mr. Helms's affidavit does not conclude that the cost of the Project exceeds the 20% requirement of Section 8.5. *Page 12 
 {¶ 26} Finally, there is no indication that the trial court granted Appellants' motion for leave to supplement their memorandum contra so as to place this second affidavit before the Court for consideration in determining summary judgment. The motion and attached affidavit were filed with the court two days before the trial court granted summary judgment.[1]
 {¶ 27} We find that there is no genuine issue of material fact that either the City's charter or the Ohio Constitution required the City to subject the Resolutions to referendum review. Accordingly, we overrule Appellants' assignments of error and affirm the trial court's grant of summary judgment in favor of the City and Kenmore Construction and denial of Appellants' motion for partial summary judgment.
Judgment Affirmed. *Page 13 
The record reflects that there is a motion for sanctions pending in the lower court. We, therefore, make no determination as to the reasonableness of this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
[1] The trial court's entry indicates that Appellants' self-serving affidavit fails to create any issue of fact regarding City finances. Because there was more than one affidavit and neither affidavit creates a genuine issue of material fact as to the City's finances, it is unclear to which affidavit the court is referring, but neither affidavit creates a genuine issue of material fact that the application of Section 8.5 of the City's charter should have triggered referendum review. *Page 1